J-S27002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.R., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.R.. MOTHER | : | No. 3504 EDA 2016 |

Appeal from the Order Entered October 5, 2016
In the Court of Common Pleas of Philadelphia County
Family Court Juvenile Division at No(s):  CP-51-AP-0000850-2016,
CP-51-DP-0001372-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: J.A.R., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.R., MOTHER | : | No. 3505 EDA 2016 |

Appeal from the Decree October 5, 2016
In the Court of Common Pleas of Philadelphia County
Family Court Juvenile Division at No(s):  CP-51-AP-0000850-2016

BEFORE:  GANTMAN, P.J., OTT, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                 **FILED MAY 12, 2017**

Appellant, A.R. ("Mother"), appeals from the order that changed the family goal to adoption, and the decree, entered in the Philadelphia County Court of Common Pleas Family Court Juvenile Division, that granted the petition of the Department of Human Services ("DHS") for involuntary termination of Mother's parental rights to her minor child, J.R. a/k/a J.A.R. ("Child").  We affirm.

In its opinion, the Juvenile Court fully and correctly set forth the

_____

*Retired Senior Judge assigned to the Superior Court.

relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Mother raises three issues for our review:

> DID THE [JUVENILE] COURT ERR IN TERMINATING [MOTHER'S] PARENTAL RIGHTS UNDER 23 PA.C.S.[A. §] 2511(A)(1), 2511(A)(2), 2511(A)(5), AND 2511(A)(8)?
>
> DID THE [JUVENILE] COURT ERR IN FINDING THAT TERMINATION OF MOTHER'S PARENTAL RIGHTS BEST SERVED [CHILD'S] DEVELOPMENTAL, PHYSICAL AND EMOTIONAL NEEDS UNDER 23 PA.C.S.[A. §] 2511(B)?
>
> DID THE [JUVENILE] COURT ERR IN CHANGING [CHILD'S] GOAL TO ADOPTION?

(Mother's Brief at vi).

Appellate review of goal change decisions implicates the following principles:

> On appeal, goal change decisions are subject to an abuse of discretion standard of review. *In re N.C.,* 909 A.2d 818, 822 (Pa.Super. 2006).
>
> > In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was "manifestly unreasonable," that the court did not apply the law, or that the court's action was "a result of partiality, prejudice, bias or ill will," as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm, "even if the record could also support an opposite result."

- 2 -

*Id.* at 822-23 (internal citations omitted).

The Juvenile Act controls the disposition of dependent children. *In re R.P.*, 957 A.2d 1205, 1217 (Pa.Super. 2008). Section 6351 provides in relevant part:

**§ 6351.    Disposition of dependent child**

\* \* \*

**(f)    Matters to be determined at permanency hearing.**—At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

\* \* \*

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist

and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

    (i)    the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

    (ii)    the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

    (iii)    the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

\*     \*     \*

**(f.1) Additional determination.**—Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety,

- 4 -

protection and physical, mental and moral welfare of the child.

(3) If and when the child will be placed with a legal custodian in cases where the return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(4) If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

\* \* \*

**(f.2) Evidence.**—Evidence of conduct by the parent that places the health, safety or welfare of the child at risk, including evidence of the use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk, shall be presented to the court by the county agency or any other party at any disposition or permanency hearing whether or not the conduct was the basis for the determination of dependency.

**(g) Court order.**—On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f), (f.1), (f.2), (g).

"When the child welfare agency has made reasonable efforts to return a [dependent] child to his…biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an

adoptive home." *In re N.C., supra* at 823 (citing *In re G.P.-R.*, 851 A.2d 967, 973 (Pa.Super. 2004)).

> Although the agency has the burden to show a goal change would serve the child's best interests, "[s]afety, permanency, and well-being of the child must take precedence over **all** other considerations" under Section 6351. *In re D.P.*, 972 A.2d 1221, 1227 (Pa.Super. 2009), *appeal denied*, 601 Pa. 702, 973 A.2d 1007 (2009) (emphasis in original); *In re S.B.*, 943 A.2d 973, 978 (Pa.Super. 2008), *appeal denied*, 598 Pa. 782, 959 A.2d 320 (2008). "[T]he parent's rights are secondary" in a goal change proceeding. *In re D.P., supra*.
>
> Because the focus is on the child's best interests, a goal change to adoption might be appropriate, even when a parent substantially complies with a reunification plan. *In re N.C., supra* at 826-27. Where a parent's "skills, including her judgment with regard to the emotional well-being of her children, remain problematic[,]" a goal change to adoption might be appropriate, regardless of the parent's compliance with a permanency plan. *Id.* at 825. The agency is not required to offer services indefinitely, where a parent is unable to properly apply the instruction provided. *In re A.L.D.*, 797 A.2d 326, 340 (Pa.Super. 2002). *See also In re S.B., supra* at 981 (giving priority to child's safety and stability, despite parent's substantial compliance with permanency plan); *In re A.P.*, 728 A.2d 375, 379 (Pa.Super. 1999), *appeal denied*, 560 Pa. 693, 743 A.2d 912 (1999) (holding where, despite willingness, parent cannot meet "irreducible minimum parental responsibilities, the needs of the child must prevail over the rights of the parent"). Thus, even where the parent makes earnest efforts, the "court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006).

*In re R.M.G.*, 997 A.2d 339, 347 (Pa.Super. 2010), *appeal denied*, 608 Pa. 648, 12 A.3d 372 (2010) (some internal citations and quotation marks

omitted).

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis

exists for the result reached. ***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. ***In re R.L.T.M.***, 860 A.2d 190, 191-92 (Pa.Super. 2004).

***In re Z.P., supra*** at 1115-16 (quoting ***In re Adoption of K.J.***, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

DHS filed a petition for the involuntary termination of Mother's parental rights to Child on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or

will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and

convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of…her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for…her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

[T]he trial court must consider the whole history of a given

- 10 -

> case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of…her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D., supra* at 337. "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

- 11 -

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Z.P., supra* at 1118.

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). "Section 2511(a)(8) sets a 12–month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12–month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the Agency supplied over a realistic time period. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services. *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa.Super. 2003); *In re Adoption of M.E.P., supra*.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have…her rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the

- 13 -

child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of…her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of…her child is converted, upon the failure to fulfill…her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Joseph Fernandes, we conclude Mother's issues merit no relief. The Juvenile Court opinion comprehensively discusses and properly disposes of the questions

- 14 -

presented. (**See** Juvenile Court Opinion, filed December 16, 2016, at 3-12) (finding: Mother's Single Case Plan ("SCP") objectives included drug and alcohol and mental health treatment, parenting capacity evaluation, and parenting, employment, housing, and anger management classes at Achieving Reunification Center ("ARC"); throughout dependency, case worker contacted Mother regarding Mother's SCP objectives; case worker re-referred Mother to ARC three times after ARC discharged Mother for not attending; DHS made reasonable efforts to assist Mother throughout dependency and have made numerous referrals to services, but Mother refused; in six-months immediately before DHS filed termination petition Mother: (a) tested positive for marijuana and test result indicated tampering; (b) failed to participate in dual diagnosis program for her substance abuse and mental health issues; (c) failed to participate in anger management, parenting, or job training classes; (d) refused to perform parenting evaluation; and (e) had no visits with Child; during entire six-month period, Mother failed and/or refused to perform parental duties or complete her SCP objectives; Mother suffers from bipolar disorder; from November 2015 to March 2016, Mother was involuntarily committed; at time of termination hearing Child had been in foster care for 16 months, yet Mother had not completed her SCP objectives; Mother failed to procure appropriate housing, her only source of income was social security disability income, and she was still unable to assume a parental role; Mother has not

performed parental duties since Child was born and is unlikely to remedy conditions which led to Child's placement within reasonable time; Mother's mental illness continues to pose severe threat to Child; Mother has not seen Child since Child was three weeks old after Mother threatened to leave Child "on the curb"; there is no relationship or bond between Mother and Child, Child would not suffer irreparable harm if court terminated Mother's parental rights to Child; Child has lived with foster parent since he was three weeks old; Child and foster parent share loving bond; Child would suffer irreparable harm if removed from foster parent; record and credible testimony of DHS witnesses supported change of permanency goal from reunification to adoption; termination of Mother's parental rights is in Child's best interests). Accordingly, we affirm on the basis of the Juvenile Court's opinion.

Order and decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/12/2017

# IN THE COURT OF COMMON PLEAS
# FOR THE COUNTY OF PHILADELPHIA
# FAMILY COURT DIVISION

In the Interest of J.R., a Minor : CP-51-DP-0001372-2015
: CP-51-AP-0000850-2016
:
: FID: 51-FN-001158-2015
:
APPEAL OF: A.R., Mother : 3504/3505 EDA 2016

**OPINION**

**Fernandes, J.:**

Appellant A.R. ("Mother") appeals from the order entered on October 5, 2016, granting the petition filed by the Philadelphia Department of Human Services ("DHS"), to involuntarily terminate Mother's parental rights to J.R. ("Child") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b). Carla Beggin, Esq., counsel for Mother, filed a timely Notice of Appeal with a Statement of Matters Complained of on Appeal pursuant to Rule 1925(b).

## Factual and Procedural Background:

The family in this case became involved with DHS on May 5, 2015, when DHS received a report that Mother had just given birth to Child, had used drugs during pregnancy and had a history of untreated mental illness. DHS investigated Mother's home on May 7, 2015, and developed a Safety Plan, which Mother signed. DHS implemented services, and referred Mother for mental health treatment. On May 21, 2015, Mother refused to engage in mental health treatment, and began banging her head against walls while yelling. DHS obtained an Order of Protective Custody and placed Child in a foster home. On June 10, 2015, Child was adjudicated dependent and fully committed to DHS custody. The case was transferred to a Community Umbrella Agency ("CUA") which developed a Single Case Plan ("SCP") with objectives for Mother. Over the course of 2015 and 2016, Mother did not complete her objectives. On September 16, 2016, DHS filed petitions to involuntarily terminate Mother's parental rights and change Child's permanency goal to adoption.

At the goal change termination trial held on October 5, 2016, the current CUA worker testified that Child had been in care for sixteen months. Child had come into care because Mother had not engaged in any prenatal care prior to Child's birth, and had untreated mental health issues. (N.T. 10/5/16, pgs. 9-11). Mother's attorney stipulated to the facts in the goal change and termination petitions. (N.T. 10/5/16, pgs. 6-7). Mother's SCP objectives were to engage in drug and alcohol and mental health treatment, take a Parenting Capacity Evaluation ("PCE") and attend the Achieving Reunification Center ("ARC") for parenting, employment, housing and anger management services. (N.T. 10/5/16, pg. 11). These objectives have been the same for the life of the case, and the CUA worker had discussed these objectives with Mother. (N.T. 10/5/16, pgs. 17-18). Mother is engaged in mental health treatment after being discharged from Ancora Psychiatric Hospital in New Jersey sometime in early August 2016. (N.T. 10/5/16, pgs. 24-26, 33, 40). It should be noted that Mother was in a psychiatric hospital from November 2015 to March 9, 2016, and was discharged to a partial program before starting outpatient therapy in early August. She never engaged in anger management. (N.T. 10/5/16, pgs. 13-14). Mother did not successfully complete parenting or employment services at ARC, and was discharged for non-attendance. Both CUA workers re-referred Mother to ARC at least three times. (N.T. 10/5/16, pgs. 15, 39). Mother's housing is not appropriate, and she did not complete the PCE. (N.T. 10/5/16, pg. 16). Mother was ordered after every court hearing to give random drug screens at the Clinical Evaluation Unit ("CEU"), but Mother never did. (N.T. 10/5/16, pg. 40). Her two most recent drug screens were positive for marijuana, and another recent drug screen was rejected because of tampering. (N.T. 10/5/16, pgs. 18, 24). Mother engaged in a dual diagnosis program for drug and alcohol treatment in September 2016. This program also provided her subsidized transitional housing. (N.T. 10/5/16, pgs. 20-23, 33-34). Mother has not successfully completed the outpatient dual diagnosis program in New Jersey. (N.T. 10/5/16, pgs. 32-33). Mother has never signed releases at CEU or provided documentation showing that she is engaged in drug and alcohol treatment, that she completed parenting classes or that she has any income. (N.T. 10/5/16, pgs. 30-31). Mother is in transitional housing, looking for permanent housing. (N.T. 10/5/16, pgs. 34-35). Mother has never had visits with Child. (N.T. 10/5/16, pgs. 27, 40-41). Child has a loving bond with the foster parent. (N.T. 10/5/16, pgs. 28-29, 31). Child would not suffer irreparable harm if Mother's rights were terminated, but would suffer irreparable harm if removed from the

foster parent. (N.T. 10/5/16, pgs. 29-30, 41). The foster parent loves Child and it is in Child's best interest to be adopted. (N.T. 10/5/16, pg. 42).

Mother testified that she was involuntarily committed from November 2015 to March 9, 2016, then entered the partial program. (N.T. 10/5/16, pgs. 49-50). Mother testified that she had completed the partial program and was about to start an outpatient program. She testified that she could apply for a waiver and reunify with Child in her current transitional housing. (N.T. 10/5/16, pg. 51). Mother testified that she has bipolar disorder, and takes medication to treat it. Her only income is SSI. (N.T. 10/5/16, pg. 52). Mother testified that she would start parenting classes "tomorrow," and that the outpatient program she was about to enroll in provides drug and alcohol treatment and anger management. (N.T. 10/5/16, pg. 53). Following argument, the trial court found that DHS and CUA had made reasonable efforts to reunify Mother and Child. (N.T. 10/5/16, pg. 57). The trial court then terminated Mother's parental rights to Child under 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b), and changed his permanency goal to adoption.[1] On November 3, 2016, Mother filed this appeal.

**Discussion:**

On appeal, Mother alleges that the trial court erred or abused its discretion:

1. When it found that DHS by clear and convincing evidence had met its burden to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5) and (8).
2. When it found that the termination of Mother's parental rights was in Child's best interests and that DHS had met its burden pursuant to 23 Pa.C.S.A. §2511(b).
3. In changing the permanent placement goal from reunification to adoption.

Mother has appealed the involuntary termination of her parental rights. It should be noted that Mother's attorney stipulated to the facts on both the goal change and termination petitions. (N.T. 10/5/16, pgs. 6-7).

---

[1] Child is the product of rape, and no putative fathers have ever come forward. The trial court terminated the parental rights of all unknown putative fathers on this date.

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511(a), which provides the following grounds for §2511(a)(1):

(a) **General rule** - The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:

(1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntarily terminate parental rights the burden of proof is on the party seeking termination, which must establish the existence of grounds for termination by clear and convincing evidence. *In re Adoption of Atencio*, 650 A.2d 1064 (Pa. 1994). To satisfy Section (a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. However, the six-month time period should not be applied mechanically; instead, the court must consider the whole history of the case. *In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004). The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue.

The petition for involuntary termination was filed on September 16, 2016. Mother's SCP objectives were to engage in drug and alcohol and mental health treatment, take a PCE and attend ARC for parenting, employment, housing and anger management services. (N.T. 10/5/16, pg. 11). During the six-month period prior to the filing of the petition, Mother gave a random drug screen which indicated tampering. Previously, Mother gave positive drug screens for marijuana. (N.T. 10/5/16, pgs. 18, 24). Mother did not engage in a dual diagnosis program until September 2016, after the petition was filed. (N.T. 10/5/16, pgs. 20-23, 33-34, 53). Mother never complied with court orders to give random drug screens at CEU. (N.T. 10/5/16, pg. 40). Mother did not engage in anger management, parenting classes or job training at ARC, and was discharged for non-attendance. Mother had to be re-referred a number of times. (N.T. 10/5/16, pg. 15, 30-31, 39, 53). Mother is in transitional housing, looking for permanent housing. (N.T. 10/5/16, pgs. 34-35). Mother was referred for a PCE soon after Child came into care, but missed the appointment.

During the six-month period, she did not complete the PCE. (N.T. 10/5/16, pgs. 16, 39). Because of her severe mental health issues, and repeated threats to leave Child "on the curb," Mother has never had visits with Child. (N.T. 10/5/16, pgs. 27, 40-41). For the majority of the life of this case, Mother has been involuntarily committed to Ancora Psychiatric Hospital in New Jersey. Mother was involuntarily committed from November 2015 to March 9, 2016. (N.T. 10/5/16, pgs. 32-33, 40, 49-50, 52). Mother was aware of her objectives. (N.T. 10/5/16, pgs. 17-18). For the entire six-month period prior to the filing of the petition, Mother failed or refused to complete her objectives and place herself in a position to parent. As a result, the trial court did not err or abuse its discretion by finding clear and convincing evidence that Mother, by her conduct, had refused and failed to perform parental duties and has evidenced a settled purpose to relinquish her parental claim to Child, so termination under this section was proper.

The trial court also terminated Mother's parental rights under 23 Pa.C.S.A. §2511(a)(2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties, but focuses more specifically on the needs of the child. *Adoption of C.A.W.*, 683 A.2d 911, 914 (Pa. Super. 1996).

Child has been in care since May 21, 2015. Mother's SCP objectives were to engage in drug and alcohol and mental health treatment, take a PCE, and attend ARC for parenting, employment, housing and anger management services. (N.T. 10/5/16, pg. 11). These objectives have been the same for the life of the case, and the CUA worker had discussed these objectives with Mother. (N.T. 10/5/16, pgs. 17-18). Mother was court-ordered to attend CEU, and was referred by CUA for an assessment, but refused to attend. (N.T. 10/5/16, pg. 40). Mother did not enroll in drug and alcohol treatment for a number of months, then was involuntarily committed to Ancora Psychiatric Hospital in New Jersey. Mother was subsequently discharged to a partial program. (N.T. 10/5/16, pgs. 24-26, 33, 40, 49-50). She testified that she completed this program in September 2016, but she has never provided documentation that she completed it. (N.T. 10/5/16, pgs. 20-23, 30-34). Mother testified that the partial program recommended that she continue attending an outpatient

program in order to successfully complete her dual diagnosis treatment. (N.T. 10/5/16, pg. 51). Despite completing the partial program in September 2016 and being recommended an outpatient program, Mother still had not enrolled in the outpatient program at the time of trial in October 2016. (N.T. 10/5/16, pg. 53). Mother has not successfully completed the outpatient dual diagnosis program. (N.T. 10/5/16, pgs. 32-38). Mother's recent drug screens were either positive for drugs or showed evidence of tampering. (N.T. 10/5/16, pgs. 18, 24). Mother has bipolar disorder, and was involuntarily committed for over four months. (N.T. 10/5/16, pgs. 49-50, 52). Mother claims she engaged in mental health therapy in her partial program, but has not provided any documentation. (N.T. 10/5/16, pgs. 13-14, 30-31, 47). Mother was referred for a PCE at the start of this case, but missed the appointment and had to reschedule. (N.T. 10/5/16, pg. 39). Mother still has not completed the PCE. (N.T. 10/5/16, pg. 16). Mother was referred to ARC for parenting, anger management, housing and employment services. She did not attend any services at ARC, and was re-referred three times by CUA following discharges for non-attendance. (N.T. 10/5/16, pgs. 15, 39). Mother claims she completed anger management at her partial program, and that the outpatient program she has not yet enrolled in will also provide anger management. Mother has never provided appropriate documentation. (N.T. 10/5/16, pgs. 13-14, 30-31, 47, 53). Mother's housing is not appropriate: she could not reunify with Child in her current subsidized transitional housing without applying for a waiver, which may not be granted. (N.T. 10/5/16, pgs. 16, 51). Mother's only income is SSI, and she has not even begun parenting classes. (N.T. 10/5/16, pgs. 15, 30-31, 52-53). Mother's behavior, especially her repeated threats to "leave the baby on the curb" posed a threat to Child. Mother has never had visits with Child, and has no relationship whatsoever with Child. (N.T. 10/5/16, pgs. 27, 41). Child needs permanency, which Mother cannot provide. Mother has demonstrated that she is unwilling to remedy the causes of her incapacity to parent in order to provide Child with essential parental care, control or subsistence necessary for his physical and mental well-being. Termination under this section was also proper.

Mother also appeals the trial court's termination of parental rights under 23 Pa.C.S.A. §2511(a)(5), which permits termination when a child was removed, by court or voluntary agreement, and placed with an agency if, for at least six months, the conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions

leading to placement, and termination best serves the child's needs and welfare. DHS, as a child and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 505, 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized that a child's needs and welfare require agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, which have been ineffective. This process should be completed within eighteen months. *In re N.W.*, 859 A.2d 501, 508 (Pa. Super. 2004).

Child has been in DHS custody since May 21, 2015. Child was placed because Mother was unable to parent. Mother's SCP objectives were to engage in drug and alcohol and mental health treatment, take a PCE and attend ARC for parenting, employment, housing and anger management services. (N.T. 10/5/16, pg. 11). These objectives have been the same for the life of the case, and the CUA worker had discussed these objectives with Mother. (N.T. 10/5/16, pgs. 17-18). Mother was court-ordered to attend CEU, and was referred by CUA for an assessment, but refused to attend. (N.T. 10/5/16, pg. 40). Mother did not enroll in drug and alcohol treatment for a number of months, then was involuntarily committed to Ancora Psychiatric Hospital in New Jersey. Mother was subsequently discharged to a partial program. (N.T. 10/5/16, pgs. 24-26, 34, 40, 49-50). She testified that she completed this program in September 2016, but she has never provided documentation that she completed it. (N.T. 10/5/16, pgs. 20-23, 30-34). Mother testified that the partial program recommended that she continue attending an outpatient program in order to successfully complete her dual diagnosis treatment. (N.T. 10/5/16, pg. 51). Despite completing the partial program in September 2016 and being recommended an outpatient program, Mother still had not enrolled in the outpatient program at the time of trial in October 2016. (N.T. 10/5/16, pg. 53). Mother's recent drug screens were either positive for drugs or showed evidence of tampering. (N.T. 10/5/16, pgs. 18, 24). Mother has bipolar disorder, and was involuntarily committed for over four months. (N.T. 10/5/16, pgs. 49-50, 52). Mother claims she engaged in therapy in her partial program, but has not provided any documentation. (N.T. 10/5/16, pgs. 13-14, 30-31, 47). Mother was referred for a PCE at the start of this case, but missed the appointment

and had to reschedule. (N.T. 10/5/16, pg. 39). Mother still has not completed the PCE. (N.T. 10/5/16, pg. 16). Mother was referred to ARC for parenting, anger management, housing and employment services. She did not attend any services at ARC, and was re-referred three times by CUA following discharges for non-attendance. (N.T. 10/5/16, pgs. 15, 39). Mother claims she completed anger management at her partial program, and that the outpatient program she has not yet enrolled in will also provide anger management. Mother has never provided appropriate documentation. (N.T. 10/5/16, pgs. 13-14, 30-31, 47, 53). Mother's housing is not appropriate: she could not reunify with Child in her current subsidized transitional housing without applying for a waiver, which may not be granted. (N.T. 10/5/16, pgs. 16, 51). Mother is looking for permanent housing. (N.T. 10/5/16, pgs. 34-35). Mother's only income is SSI, and she has not even begun parenting classes. (N.T. 10/5/16, pgs. 15, 30-31, 52-53). Mother's behavior, especially her repeated threats to "leave the baby on the curb" posed a threat to Child. Mother has never had visits with Child, and has no relationship whatsoever with Child. (N.T. 10/5/16, pgs. 27, 41). DHS and CUA have made appropriate referrals to services, but those referrals have been unavailing. The conditions that brought Child into care have not been remedied, and Mother is unable, at the time of trial, to parent. Mother's testimony regarding completion of her objectives relied largely on a promise to engage in drug and alcohol and mental health treatment, take parenting classes and anger management and obtain a housing waiver through an outpatient program in which she is not yet enrolled. (N.T. 10/5/16, pgs. 51, 53). The trial court has always found reasonable efforts on behalf of DHS. The court properly found that Mother would not be able to remedy the causes of her incapacity to parent within a reasonable time. Child is placed with a loving foster parent, and is bonded with her. The foster parent has had Child nearly since Child's birth, and is the only parent he has ever known. Child is so attached to the foster parent that he would suffer irreparable harm if he was removed from her care. It is in Child's best interest to be adopted. (N.T. 10/5/16, pgs. 28-31, 41-42). As a result, the trial court found that termination of Mother's parental rights was in the best interest of Child for his physical, intellectual, moral and spiritual well-being. Because the trial court made these determinations on the basis of clear and convincing evidence, termination under this section was also proper.

The trial court also terminated Mother's parental rights under 23 Pa.C.S.A. §2511(a)(8), which permits termination when:

The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

This section does not require the court to evaluate a parent's willingness or ability to remedy the conditions which initially caused placement or the availability or efficacy of DHS services offered to the parent, only the present state of the conditions. _In re: Adoption of K.J.,_ 936 A.2d 1128, 1133 (Pa. Super. 2007). The party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child such as love, comfort, security and stability. _In re Bowman,_ 647 A.2d 217 (Pa. Super. 1994). See also _In re Adoption of T.T.B.,_ 835 A.2d 387, 397 (Pa. Super. 2003).

Child has been in DHS custody since May 21, 2015, over sixteen months at the time of trial. Child was placed because Mother was unable to parent. Mother's SCP objectives were to engage in drug and alcohol and mental health treatment, take a PCE and attend ARC for parenting, employment, housing and anger management services. (N.T. 10/5/16, pg. 11). These objectives have been the same for the life of the case, and the CUA worker had discussed these objectives with Mother. (N.T. 10/5/16, pgs. 17-18). Mother was court-ordered to attend CEU, and was referred there by CUA for an assessment, but refused to attend. (N.T. 10/5/16, pg. 40). Mother did not enroll in drug and alcohol treatment for a number of months, then was involuntarily committed to Ancora Psychiatric Hospital in New Jersey. Mother was subsequently discharged to a partial program. (N.T. 10/5/16, pgs. 24-26, 34, 40, 49-50). She testified that she completed this program in September 2016, but she has never provided documentation that she completed it. (N.T. 10/5/16, pgs. 20-23, 30-34). Mother testified that the partial program recommended that she continue attending an outpatient dual diagnosis program in order to successfully complete treatment. (N.T. 10/5/16, pg. 51). Despite completing the partial program in September 2016 and being recommended an outpatient program, Mother still had not enrolled in the outpatient program at the time of trial in October 2016. (N.T. 10/5/16, pg. 53). Mother's recent drug screens were either positive for drugs or showed evidence of tampering. (N.T. 10/5/16, pgs. 18, 24). Mother did not comply with court orders to give random drug screens at CEU. (N.T. 10/5/16, pgs. 40). Mother has bipolar disorder, and was involuntarily committed for over four months in a New Jersey

psychiatric hospital. (N.T. 10/5/16, pgs. 49-50, 52). Mother claims she engaged in therapy in her partial program, but has not provided any documentation. (N.T. 10/5/16, pgs. 13-14, 30-31, 47). Mother was referred for a PCE at the start of this case, but missed the appointment and had to reschedule. (N.T. 10/5/16, pg. 39). Mother still has not completed the PCE. (N.T. 10/5/16, pg. 16). Mother was referred to ARC for parenting, anger management, housing and employment services. She did not attend any services at ARC, and was re-referred three times by CUA following discharges for non-attendance. (N.T. 10/5/16, pgs. 15, 39). Mother claims she completed anger management at her partial program, but has never provided appropriate documentation. (N.T. 10/5/16, pgs. 13-14, 30-31, 47, 53). Mother's housing is not appropriate: she could not reunify with Child in her current subsidized transitional housing without applying for a waiver, which may not be granted. (N.T. 10/5/16, pgs. 16, 51). Mother does not have permanent housing. (N.T. 10/5/16, pgs. 34-35). Mother's only income is SSI, and she has not even begun parenting classes. (N.T. 10/5/16, pgs. 15, 30-31, 52-53). Mother's behavior, especially her repeated threats to "leave the baby on the curb" posed a threat to Child. Mother has never had visits with Child, and has no relationship whatsoever with Child. (N.T. 10/5/16, pgs. 27, 41). The conditions that brought Child into care have not been remedied, and Mother is unable, at the time of trial, to parent. Child is placed with a loving foster parent, and is bonded with her. The foster parent has had Child nearly since Child's birth, and is the only parent he has ever known. Child is so attached to the foster parent that he would suffer irreparable harm if he was removed from her care. It is in Child's best interest to be adopted. (N.T. 10/5/16, pgs. 28-31, 41-42). The testimony of DHS witnesses was unwavering and credible. Because the record contains clear and convincing evidence, the trial court did not abuse its discretion and termination under this section was also proper.

After a finding of any grounds for termination under Section (a), the court must, under 23 Pa.C.S.A. §2511(b), also consider what - if any - bond exists between parent and child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship". *In re Adoption of T.B.B.* 835 A.2d 387, 397 (Pa. Super. 2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super.

2008). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis depends on the circumstances of the particular case. *In re K.Z.S.* at 762-763. However under 23 Pa.C.S.A. §2511(b), the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care, if found to be beyond the control of the parent.

Mother has severe mental health issues, and has threatened to "leave the baby on the curb." Her untreated mental health issues posed a threat to Child. Mother has never had visits with Child, and has no relationship whatsoever with Child. As a result, the court reasonably inferred that no bond exists. (N.T. 10/5/16, pgs. 27, 40-41). Child would not suffer irreparable harm if Mother's rights were terminated. (N.T. 10/5/16, pgs. 29-30, 41). Child is placed with a loving foster parent, and is bonded with her. The foster parent has had Child nearly since Child's birth, and is the only parent he has ever known. Child is so attached to the foster parent that he would suffer irreparable harm if he was removed from her care. It is in Child's best interest to be adopted. (N.T. 10/5/16, pgs. 28-31, 41-42). These facts showed, by clear and convincing evidence, that termination would not sever an existing and beneficial relationship. The trial court's termination under this section was proper and should be affirmed.

Mother also alleges that the court erred in changing the Children's permanency goal from reunification to adoption. In a change of goal proceeding, the child's best interest must be the focus of the trial court's determination. The child's safety and health are paramount considerations. *In re A.H.*, 763 A.2d 873 (Pa. Super. 2000). Pennsylvania's Juvenile Act recognizes family preservation as one of its primary purposes. *In the Interest Of R.P. a Minor*, 957 A.2d 1205 (Pa. Super. 2008). As a result, welfare agencies must make efforts to reunify the biological parents with their child. Nonetheless, if those efforts fail, the agency must redirect its efforts toward placing the child in an adoptive home. Agencies are not required to provide services indefinitely when a parent is unwilling or unable to apply the instructions received. *In re R.T.*, 778 A.2d 670 (Pa. Super. 2001). The trial court should consider the best interest of the child as it exists presently, rather than the facts at the time of the original petition.

Mother has severe mental health issues, which posed a threat to Child. (N.T. 10/5/16, pgs. 40-41, 52). She has not provided documentation that she is engaged in treatment. (N.T. 10/5/16, pgs. 30-31). Mother claims – without documentation – that she has completed a course of drug and alcohol treatment, but still tests positive for drugs at CEU. (N.T. 10/5/16, pgs. 18, 24, 30-31, 40, 49-50). Mother has not completed parenting classes or anger management. (N.T. 10/5/16, pgs. 13-15, 30-31, 47, 53). She does not have a job. She has little source of income. She receives SSI. (N.T. 10/5/16, pg. 52). Mother has been hospitalized in a psychiatric hospital, and completed a partial program. The partial program recommended that Mother continue attending an outpatient dual diagnosis program in order to successfully complete treatment. (N.T. 10/5/16, pgs. 24-26, 34, 40, 49-50). Mother is not enrolled in the outpatient program as of October 2016. (N.T. 10/5/16, pg. 53). The only housing she can provide is subsidized transitional housing, where Child may not be allowed without a waiver. (N.T. 10/5/16, pgs. 16, 51). Mother does not have permanent housing. (N.T. 10/5/16, pgs. 34-35). Mother has never completed a PCE. (N.T. 10/5/16, pg. 16, 39). Mother has never had visits with Child and has no relationship with him. (N.T. 10/5/16, pgs. 27, 40-41). Child is placed with a loving foster parent, and is bonded with her. The foster parent has had Child nearly since Child's birth, and is the only parent he has ever known. Child is so attached to the foster parent that he would suffer irreparable harm if he was removed from her care. It is in Child's best interest to be adopted. (N.T. 10/5/16, pgs. 28-31, 41-42). Because these facts were clearly and convincingly established by the credible testimony of DHS's witness, the court's change of permanency goal from reunification to adoption was proper. The trial court did not err or abuse its discretion.

**Conclusion:**

For the aforementioned reasons, the court found that DHS met its statutory burden by clear and convincing evidence regarding termination of Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b) since it would best serve Child's emotional needs and welfare. Changing Child's permanency goal to adoption was in his best interest. The trial court's termination of Mother's parental rights and change of permanency goal to adoption was proper and should be affirmed.

By the court,

Joseph Fernandes, J.